111 So.2d 895 (1959)
Chester Leroy NEWTON, Plaintiff-Appellee,
v.
Frank PACILLO et al., Defendants-Appellants.
No. 8994.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1959.
Rehearing Denied May 27, 1959.
Certiorari Denied June 25, 1959.
*896 Joseph R. Bethard, Shreveport, for appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Luther S. Montgomery, Shreveport, for appellee.
AYRES, Judge.
This is an action in tort arising out of an accident of April 26, 1958, wherein plaintiff was allegedly struck by an automobile driven by Mrs. Grace J. Pacillo, one of defendants, and in which plaintiff allegedly sustained serious, painful and permanent injuries.
The accident occurred about 9:00 o'clock P. M. near the middle of the 1400 block of Barksdale Boulevard. This boulevard constitutes a segment of U. S. Highway 71 as it traverses Bossier City in a general east and west course. This is a concrete paved six-lane highway 60 feet wide, consisting of two traffic lanes in either direction, with an on-street parking lane on each side. The block is unusually long, approximately 600 feet, but is well illuminated by street lights at both ends as well as in the middle of the block, with additional illumination provided by the business establishments located in the vicinity. Heavy rains had fallen during the day and a mist persisted to the time of the accident. The street was wet. Water covered the eastern portion of the block, varying from about 1½ inches in depth at the center to several inches on the sides of the street. No sidewalks parallel this block. Mrs. Pacillo was proceeding easterly on Barksdale Boulevard to a restaurant operated by her husband. The lights on her vehicle were properly functioning.
Events immediately preceding the accident may be briefly stated. Plaintiff, a young man, not quite 21 years of age at *897 the time, accompanied by a friend, Billie P. Little, was walking in an easterly direction on the south side of Barksdale Boulevard. On reaching a point where water covered the pedestrian walkway near the middle of the aforesaid block, they decided to cross the street and continue east on the north side where they anticipated less water. They started to cross and, on arriving at approximately the center of the street, on observing the approach of an automobile from their right, they either stopped or continued to walk slowly eastward down the middle of the street. While so doing, Mrs. Pacillo approached from the west and the accident occurred, resulting in the injuries for which plaintiff now seeks to recover damages.
Plaintiff alleged that the accident resulted from the negligence of Mrs. Pacillo in a number of particulars in that she failed to maintain a proper lookout, or to keep her vehicle under control, or to observe plaintiff, or to operate her car at a proper rate of speed, or to stop it or to turn it in either direction to avoid striking plaintiff, and, alternatively, alleged that Mrs. Pacillo had the last clear chance to avoid the accident but failed to avail herself of the opportunity to do so. Defendants denied liability, asserting Mrs. Pacillo's freedom from negligence and charged plaintiff with negligence constituting a proximate cause of the accident, and, alternatively, with contributory negligence.
After trial and submission of the case, the trial court concluded that Mrs. Pacillo had the last clear chance to avoid the accident and that she failed to avail herself of that opportunity, and, accordingly, rendered judgment in favor of the plaintiff. Defendants have appealed. Plaintiff, in answer to the appeal, has prayed that the award be increased.
As to the question of liability, plaintiff concedes his own gross negligence and relies solely upon the doctrine of last clear chance. Defendants contend that the doctrine has no application in the instant case.
The question for determination is the applicability vel non of the doctrine of last clear chance to the facts and circumstances of the instant case. The doctrine as applied to those operating motor vehicles is that where a motorist sees, or where by the exercise of due diligence he should and could have seen, a person in peril, of which such person is unaware or unable to extricate himself, the duty devolves upon the motorist to use every possible available means to avert injury, notwithstanding the negligence of such person; and if the motorist fails to perform such duty, the last clear chance doctrine applies, even though such other person's negligence continues to the moment of the occurrence of the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 960, 181 So. 195.
For the successful invocation of the doctrine the existence or presence of three essential elements must be established, (1) that the plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered or was in a position where he should have discovered plaintiff's peril, and (3) that, at the time, the defendant could have, with the exercise of reasonable care, avoided the accident. Brown v. Louisville & Nashville R. R. Co., 5 Cir., 234 F.2d 204; Id., D.C., 135 F.Supp. 28; Segreto v. American Automobile Ins. Co., 5 Cir., 239 F.2d 641; Id., D.C., 137 F. Supp. 194; Maryland Casualty Co. v. Allstate Ins. Co., La.App., 96 So.2d 340, 344; Ballard v. Piehler, La.App., 98 So.2d 273, 276; Russo v. Texas & P. Ry. Co., 189 La. 1042, 181 So. 485.
A brief résumé of the facts of the case to which the aforesaid principles are allegedly applicable is indispensable to an understanding and a discussion of the merits of the issue presented. The witnesses to the accident were plaintiff, his companion, and the defendant, Mrs. Pacillo. Others testifying to material facts were one Melvin Stewart, an employee in a garage fronting the street at the scene of the accident, and *898 the police officers who made an investigation.
From the demeanor of plaintiff and of his companion and the many contradictions and inconsistencies in their testimony, little credence can be placed in their statements given on or for the purpose of the trial of this case. Nevertheless, the evidence establishes that plaintiff and Little were walking in an easterly direction along the south side of Barksdale Boulevard; that when they reached the middle of the 1400 block thereof they resolved to cross over the street to the north side to avoid walking through water covering the street and walkway; that, in carrying out this intention and on reaching the center of the street, they either stopped or slowly walked a few steps easterly awaiting the passage of a motor vehicle approaching from their right, that is, from the east. Little testified that, before starting across the street and while standing in the walkway on the south side of the street, he saw an automobile approaching from his left, that is, from the west, about a block away. This is the automobile later ascertained to be that of Mrs. Pacillo. Nevertheless, he and plaintiff proceeded into the street without his ever having called plaintiff's attention to the approach of the car. This automobile, he says, when he first saw it, was in its right-hand lane of traffic, but that when they reached the center of the street the car took a diagonal course across the street and struck plaintiff. Before entering the street plaintiff testified he looked for traffic, particularly to his left, and saw none approaching; that he never saw the car that struck him, but momentarily before the impact he heard the sloshing of water behind him in the street by the approach of a motor vehicle and, as he lifted his foot to turn around, he was struck by the car.
Stewart, from his place of business, saw plaintiff and Little in the middle of the street walking slowing along the center. At the time Stewart was engaged in cleaning out a storm sewer connection which had become stopped, causing his place to overflow. On seeing a westbound car approaching he hurriedly discontinued his labor and departed to avoid the water splashed by the passing car. Although his attention was distracted momentarily at the precise moment of the occurrence of the accident, he nevertheless saw defendant's car as it approached, which he says was "not moving very fast". According to his testimony, Mrs. Pacillo stopped immediately following the accident in her proper lane of travel about 15 feet distant from where plaintiff was lying.
Mrs. Pacillo's version of the accident is that while proceeding at about 20 miles per hour in an easterly direction on Barksdale Boulevard in the right-hand lane, that is, the most southerly of the two outbound traffic lanes, with her left wheels possibly slightly over the white line separating said lanes of travel, she saw two men standing in the center of the street, facing north; that, as she neared the water in the street, she reduced her speed to possibly 15 miles per hour, and when about even with the men, one of them ran out and hit the left front fender of her car.
Captain John A. Jones, Sr., and Officer J. D. Plummer of the Bossier City Police Department were immediately called to the scene of the accident and made an investigation. On their arrival they found Mrs. Pacillo sitting in her car, which she had brought to a stop in her right-hand lane, with the left wheels just over the line that divides the two outbound traffic lanes. Only slight damage was done to the car and no damage to the windshield whatsoever, but there was a small dent in the left side of the hood and a sign of the impact on the left front fender to the left of the left headlight. Plaintiff was lying unconscious in the center of the street. Mrs. Pacillo and Billie P. Little were questioned by the officers at the scene of the accident. Mrs. Pacillo told the officers that as she was traveling east enroute to a cafe owned by her husband she saw two men, who afterwards were learned to be plaintiff and *899 Little, in the street; that they were proceeding north across the street and as she started to pass them one of them darted back in front of her; that she was right at him and there was no way she could maneuver her car to keep him from striking it.
In referring to Little's version of the accident, Captain Jones testified:
"He said that they hadwas out in the middle of the street, had started across the north side of the street, because they seen this car coming that the lady was driving. They started across out of her way, and they looked up and seen a westbound car enter into the water, which water was pretty deep. And when it began to throw the water, this young man that got hit wheeled back to get out of the way of that water, and he grabbed at him and missed him, and that is when this lady's car hit him."
Similar testimony was given by Officer Plummer.
From this record, it can only be concluded that the doctrine of last clear chance has no application to the facts of the instant case. In the first place, the evidence is most convincing that Mrs. Pacillo was without fault. For that reason the doctrine would have no application. Hebert v. Meibaum, 209 La. 156, 24 So. 2d 297, 300. Nor can it be concluded plaintiff has established the presence or existence of the three aforesaid essential elements prerequisite to the application of the doctrine. As to the first of these elements, it is contended that Mrs. Pacillo saw plaintiff and his companion in the street when she was at a distance of 300 feet away. Even so, the evidence does not establish that plaintiff was then in a position of peril. Quite to the contrary, so far as defendant's car was concerned, plaintiff was in a position of safety, at least 10 feet from defendant's lane of travel. The situation as to plaintiff's safety only changed when he, suddenly and without warning, darted in front of defendant's car in order to avoid the splashing of water from a westbound vehicle approaching on the north side of the street. It was then, and only then, that plaintiff placed himself in a position of peril. Nor is plaintiff's position as to the second and third elements tenable. It was not possible for Mrs. Pacillo to have observed plaintiff's perilous position sooner than she did. Her discovery was simultaneous with plaintiff's act in placing himself in such position. At that time she had neither time, distance nor opportunity to do anything effective to avoid the accident.
Moreover, Mrs. Pacillo was operating her car at a reasonable and moderate rate of speed, even considering the unfavorable weather conditions then prevailing. She was in her proper lane of travel and, from her observation at a distance of 100 yards of plaintiff and his companion in the center of the street, facing opposite her lane of travel, it cannot be correctly contended she was not maintaining a proper lookout. It has been held that in gauging the fault which may be attributable to a motorist who was operating his vehicle in obedience to positive law, such as at a reasonable rate of speed and in a proper lane of travel and while maintaining a proper lookout, one should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred. Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Wood v. Manufacturers Casualty Co., La.App., 107 So.2d 309; Henderson v. Central Mutual Ins. Co., La.App., 111 So.2d 351. No dereliction of duty or the failure to exercise due care was established on the part of Mrs. Pacillo. To the contrary, the record is most convincing that plaintiff's fault and negligence in suddenly darting out almost in front of defendant's car was the sole proximate cause of the accident.
While the record would show both plaintiff and Little were apparently more intoxicated than either admitted or pretended *900 neither admitted drinking more than three beers during the course of the eveningthe record is devoid of any showing that Mrs. Pacillo had notice or knowledge of their intoxication, nor did their actions convey to her the slightest indication of such a condition. A motorist is not required to anticipate that a pedestrian will suddenly and without any apparent cause leave a place of safety and walk in front of an approaching automobile unless there is some unusual action on the part of the pedestrian to indicate to the driver that he is not in full possession of his faculties and is unable to look after his own safety. Coleman v. Terrebonne Ice Co., La.App., 8 So.2d 313.
Cited in support of plaintiff's contentions are the cases of: Rottman v. Beverly, supra; Jackson v. Cook, supra; Ingram v. State Farm Mut. Automobile Ins. Co., La. App., 35 So.2d 781; Wheadon v. Porter, La.App., 69 So.2d 610. Distinctions are sought to be made between the instant case and those cited by defendants in support of their positions. Among the latter, in addition to those cited or quoted hereinabove, are: Wolosynowski v. New York Cent. R. Co., 254 N.Y. 206, 172 N.E. 471; Thompson v. Dyer, La.App., 1 So.2d 433; Jones v. American Mut. Liability Ins. Co., La.App., 189 So. 169; Flowers v. Morris, La.App., 43 So.2d 917; Moore v. Nola Cabs, Inc., La.App., 70 So.2d 404; McInnis v. Radecker, La.App., 72 So.2d 348.
We do not deem it necessary to prolong this opinion by a detailed discussion of the facts upon which the rulings were made in the foregoing cases. From our study and review of these authorities, we find nothing that would warrant or justify any alteration or modification of the aforesaid views and conclusions. So far as applicable to the facts of the instant case, these authorities, in our opinion, support the views we have expressed and the conclusions we have reached.
For the above reasons, the doctrine of last clear chance, or of discovered peril, is, in our opinion, inapplicable to the facts shown to exist here. This conclusion impels us to the further determination that the judgment appealed is manifestly erroneous.
Accordingly, the judgment appealed is annulled, avoided, reversed and set aside and it is now ordered, adjudged and decreed that plaintiff's demands be and they are hereby rejected and his suit dismissed at his cost, including the cost of the appeal.
Reversed.