McBRIDE, Judge.
On July 20, 1961, about 10 p. m., the ancient and decrepit Studebaker open-bodied automobile truck which Ronald Re-gan was driving, in the extreme right-hand lane on Highway U. S. 90 towards New Orleans, stalled at a point approximately two miles east of intersecting U. S. 11, and about five minutes later was run into from the rear by a Cadillac automobile owned and driven by William S. Vincent who, with his liability insurance carrier, has been sued herein. Regan, an emancipated minor, seeks to recover for alleged physical injuries, etc., sustained as a result of the collision and Regan’s father (the owner) seeks the amount of damages inflicted on the truck. After a trial on the merits, plaintiffs’ demands were dismissed and they have appealed.
At the locus in quo U. S. 90 is composed of four traffic lanes, two accommodating vehicles traveling towards New Orleans; the other two are dedicated to traffic moving in an opposite direction. On each side of the highway is a wide shoulder surfaced with clam shells.
Regan and his passenger, Oberling, made no attempt whatever to push the stalled truck off the highway. For two minutes Regan endeavored unsuccessfully to start the motor and he admits having turned off the lights so as to decrease the pull on the battery. He then proceeded to the rear of the truck to secure some flares and a flashlight, but was unable to open the box in which they were contained. Regan claims he then assumed a position in the roadway on the left side of the truck and “flagged” *80 several cars endeavoring to secure a “push” to a service station some distance away, but the passing motorists ignored his signals.
Vincent was driving 55-60 miles per hour towards New Orleans in the same lane; upon observing the truck, he swerved to the adjoining lane so as to pass the truck on the left, and would have done so without incident had it not been for the fact that Regan was standing squarely in the left-hand lane waving his hands. The Cadillac was then so close to both Regan and the truck that Vincent could not stop and was left with the choice of running down the young man or swerving sharply to the right to go upon the right shoulder. He took the latter course. However, he could not swerve sharply enough and the Cadillac struck the truck. The fact that the left front of the Cadillac hit the truck supports Vincent’s statements that he made the swerve to the right. Regan somehow was injured and both vehicles sustained damage.
It is manifest Regan was guilty of negligence in several respects and this is conceded by his attorney," the only question to be resolved in the case is whether Vincent had the last clear chance to avoid an accident.
There was nothing imprudent or careless in Vincent’s actions. When he became aware of the stationary truck, he did what any motorist probably would have done under the circumstances, i. e., he maneuvered into the left lane in order to pass the stalled vehicle; we know of no rule or law which required that he bring his car to a stop. It is unfortunate that young Regan saw fit to place himself in a position of extreme danger, but as the record is convincing that an accident could not have been avoided, Vincent is not to be held liable.
We agree with these observations of the trial judge :
“It is the Court’s opinion that Mr. Vincent was faced with a sudden emergency, not of his own creation, and that he did all that was required of him under the circumstances. When Mr. Vincent, in attempting to go around the truck, found Ronald Regan standing in his path in the highway, he was faced with- a second emergency from which he was unable to extricate himself despite his diligent efforts so to do.
“Accordingly, I am of the opinion that Ronald Regan was guilty of negligence proximately contributing to the accident and that Mr. Vincent did not have a last clear chance to avoid the accident.”
Regan was at all times aware of his dangerous position and he could have at any time extricated himself therefrom. We think the last clear chance, if there was any, reposed in him.
In Phares v. Biggs, 135 So.2d 507 (La.App., 2nd Circuit, cert. denied), the court said:
“The doctrine of ‘discovered peril;’ ‘apparent peril,’ or ‘last clear chance’ confirmed by the landmark cases of Rottman v. Beverly, et al., 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195, has since been considered in numerous cases before our appellate courts in elaborate detail. Certain essential elements of proof required for the successful invocation of the doctrine must be established by the party relying thereupon. These probative factors were named in Newton v. Pacillo, La.App., 111 So.2d 895, 897 (2nd Circuit, 1959, certiorari denied), as follows:
“‘(1). That the plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself;
“ ‘(2). That the defendant actually discovered or was in a position where he should have discovered plaintiff’s peril, and
*81 “‘(3). That, at the time, the defendant could have, with the exercise of reasonable care, avoided the accident.’ (Authorities cited.)”
The judgment appealed from is affirmed.
Affirmed.